| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| FORMAN HOLT ELIADES & YOUNGMAN LLC<br>80 Route 4 East, Suite 290<br>Paramus, NJ 07652<br>(201) 845-1000<br>Proposed Attorneys for Catherine E. Youngman,<br>Chapter 7 Trustee<br>Harry M. Gutfleish (HG-6483 | |
| In Re:<br><br>NEW CENTURY TRANSPORTATION, INC.<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 14-22093 |
| In Re<br><br>　NORTHWIND LOGISTICS, LLC<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 14-22094 |
| In Re<br><br>WESTERN FREIGHTWAYS, LLC<br><br>　　　　　Debtor. | Chapter 7<br><br>Case No. 14-22095 |

**TRUSTEE'S APPLICATION FOR INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, 721,
RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE, AND D.N.J. LBR 4001-4 (I) AUTHORIZING THE TRUSTEE TO
OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE TRUSTEE
TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI)
GRANTING RELATED RELIEF, AND (VII) SCHEDULING A FINAL
<u>HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**

00362256 - 3

Catherine E. Youngman, the chapter 7 trustee (the "Trustee") for New Century Transportation, Inc., Northwind Logistics, LLC, and Western Freightways, LLC (the "Debtors"), through her attorneys, Forman Holt Eliades &Youngman LLC, submits this application in support of her Motion for Interim and Final Orders pursuant to sections 105, 361, 362, 363, 364, 507, 721 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, and D.N.J. LBR 4001-4 (I) authorizing the Trustee to obtain postpetition financing, II) authorizing the Trustee to use cash collateral, (III) granting liens and providing superpriority administrative expense status, (IV) granting adequate protection, (V) modifying the automatic stay, and (VI) granting related relief. In support, the Trustee represents that:

**A.    Jurisdiction and Venue**

1.    On June 11, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2.    On June 12, 2014, the Office of the United States Trustee appointed the Trustee to serve as the chapter 7 trustee for each of the Debtors' bankruptcy estates.

3.    This Court has jurisdiction over the Debtors' cases and over this motion under 28 U.S.C. §§ 157(b) and 1334.

4.    This matter is a core proceeding as that term is used and defined in 28 U.S.C. § 157(b)(2).

5.    Venue of the Debtors' cases and this matter is proper in this district under to 28 U.S.C. §§ 1408 and 1409.

**B.      Summary Of Relief Sought**

6.      The Debtors operated a substantial trucking business moving freight for customers throughout the United States.  The Debtors operated approximately 816 tractors (of which 250 are leased) and approximately 1,887 trailers (of which 200 were leased), and employed over 1,500 people shortly before the Petition Date.

7.      As of the Petition Date, many of the Debtors' vehicles were on the road completing deliveries for their customers. Some of the freight in the system consisted of hazardous materials, controlled substances such as prescription drugs, and perishable items.

8.      If delivery of the freight in the system is not completed, it will significantly impair the value of the Debtors' accounts receivable, a key component of the Debtors' assets.

9.      In order to marshal the Debtors' fleet and maximize its value, the Trustee requires access to funding from the existing Prepetition Senior Lenders to pay costs of rent, insurance and fuel to move the vehicles to locations where they can be secured and ready for sale.

10.     In addition, the Trustee requires funding to pay (a) costs of employees who have worked until the Petition Date and whose wages, salaries and benefits are entitled to priority, and who will be retained by the Trustee after the Petition Date, and (b) other expenses set forth in the Budget (defined below), including a carve out for the commissions of the Trustee, fees of her retained professionals, and the United States Trustee fees.

11.     The proposed terms governing the Trustee's use of cash collateral and the postpetition financing are set forth in the Interim Order filed herewith (the "Interim Order") and the exhibits thereto.

**C.     The Debtor's Assets and Debt Structure**

12.     The Debtors' assets consist primarily of its trucks and trailers, and accounts receivable. Based on analyses prepared for the Debtors prior to the Petition Date, the Trustee believes that the value of those assets -- either obtained through an orderly liquidation or forced sale liquidation process -- is less than the aggregate of the debts owed on the Prepetition Secured Obligations (as defined and discussed below).

13.     Pursuant to a Loan and Security Agreement dated as of August 3, 2012 (the "Prepetition Senior Credit Agreement"), as amended, modified and/or supplemented from time to time, the and related documents and agreements (the "Prepetition Senior Credit Documents"), executed by each of the Debtors and Capital One Leverage Finance, Corp., as agent (the "Prepetition Senior Agent") acting on behalf of and for the benefit of itself and the other lenders (collectively, the "Prepetition Senior Lenders"), the Prepetition Senior Lenders agreed to provide the Debtors with revolving and term loan commitments, for working capital purposes and to facilitate the issuance of letters of credit, in the maximum aggregate principal amount of $60,000,000.00.

14.     As of the Petition Date, the aggregate outstanding principal amount owed by the Debtors under the Prepetition Senior Credit Documents was not less than $35,000,000.00 (together with any interest, fees, costs and other charges or amounts paid, incurred or accrued prior to the Petition Date and interest, fees and charges allowable under section 506(b) of the Bankruptcy Code) (collectively, the "Prepetition Senior Obligations").

15.     In consideration, the Debtors granted first-priority security interests in and liens (collectively, the "Prepetition Senior Liens") on substantially all of their personal and real property, including, without limitation, accounts, inventory, equipment and general intangibles

(collectively, the "Prepetition Collateral") to the Prepetition Senior Agent, on behalf of and for the benefit of itself and the other Prepetition Senior Lenders, to secure repayment of the Prepetition Senior Obligations.

16.     The Trustee has been informed, but has not verified, that pursuant to a Subordinated Loan Agreement dated as of August 3, 2012 (as amended, modified and/or supplemented from time to time) and related documents and agreements (collectively, the "Prepetition Subordinated Credit Documents"), the Debtors also had outstanding secured debt owed to Prospect Capital Corporation, as agent (the "Prepetition Subordinated Agent") acting on behalf of and for the benefit of itself and the other lenders (collectively, the "Prepetition Subordinated Lenders" and, together with the Prepetition Senior Lenders, the "Prepetition Lenders").  The Prepetition Subordinated Credit Documents together with the Prepetition Senior Credit Documents are collectively referred to herein as the "Prepetition Credit Documents".  The Trustee has been advised that the Debtors borrowed $44 million under the Prepetition Subordinated Credit Documents.

17.     The Trustee has been informed, but has not verified, that as of the Petition Date, there was a debt owed by the Debtors under the Prepetition Subordinated Credit Documents (collectively, the "Prepetition Subordinated Obligations" and, together with the Prepetition Senior Obligations, the "Prepetition Secured Obligations").

18.     The Trustee has been informed, but has not verified, that under the Prepetition Subordinated Credit Documents, the Debtors granted second-priority security interests in and liens (the "Prepetition Subordinated Liens") on the Prepetition Collateral to the Prepetition Subordinated Agent acting on behalf of and for the benefit of itself and the other Prepetition Subordinated Lenders to secure repayment of the Prepetition Subordinated Obligations. The

Prepetition Subordinated Liens and the Prepetition Senior Liens are collectively referred to herein as the "Prepetition Liens."

19. The Trustee reserves all rights with respect to the Prepetition Subordinated Obligations and the Prepetition Subordinated Liens.

20. The Prepetition Lenders entered into a Subordination and Intercreditor Agreement dated as of August 3, 2012 (the "Subordination Agreement"), pursuant to which the Prepetition Subordinated Lenders agreed, among other things and as more specifically set forth therein, that (a) the Prepetition Subordinated Obligations are subordinated in all respects to the prior payment in full of the Prepetition Senior Obligations, and (b) the Prepetition Subordinated Liens are subordinate and junior in all respects to the Prepetition Senior Liens.

21. Prior to the Petition Date, the Debtors were in default under the Prepetition Senior Credit Documents and remained in default as of the Petition Date.

**D. Necessity For Use Of Cash Collateral And Postpetition Financing**

22. The Trustee seeks authorization to use cash collateral, as defined in section 363(a) of the Bankruptcy Code, in which the Prepetition Lenders assert an interest and to obtain postpetition loans and advances up to a maximum amount of $8,962,000 (the "Postpetition Facility") from the Postpetition Lenders in accordance with the Interim Order and the Term Sheet attached thereto (the "Term Sheet").

23. The Trustee's need to use cash collateral and to obtain credit pursuant to the Postpetition Facility is immediate and critical in order to enable the Trustee to continue operations, to administer and preserve the value of their estates, and to conduct an orderly liquidation of the Debtors' assets for the benefit of their estates and creditors.

6

24. The Trustee's ability to finance the Debtors' operations, protect the value of their assets and transport their assets to be liquidated, and maintain business relationships and pay employees to the extent necessary to accomplish the foregoing, all require the availability of working capital from the Postpetition Facility and the use of cash collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and any equity holders, and the possibility for a successful administration of these cases.

25. Without the Postpetition Facility and authorized use of Cash Collateral herein, neither the Debtors nor the Trustee have sufficient available sources of working capital and financing to operate the Debtors' businesses, to maintain their assets in the ordinary course of business, or to prevent the deterioration of their asserts and transport them for orderly liquidation.

26. Given their current financial condition, financing arrangements, and capital structure, neither the Debtors nor the Trustee are able to obtain financing from sources other than the Postpetition Lenders on terms more favorable than the Postpetition Facility.

27. Neither the Debtors nor the Trustee have been able to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

28. Neither the Debtors nor the Trustee have been able to obtain credit (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.

29. Financing on a postpetition basis is not otherwise available without granting the Postpetition Lenders, (a) perfected security interests in and liens on all of the Debtors' existing

and after-acquired assets with the priorities set forth in the Interim Order and in the Term Sheet, (b) superpriority claims, and (c) the other protections set forth in the Interim Order and in the Term Sheet.

E.     **Terms Of the Proposed Facility**

30.    The Terms of the Postpetition Facility are set forth in the Interim Order filed and served herewith and in the Term Sheet. The following is a summary of the more pertinent terms of the Interim Order and the Term Sheet. If there is an inconsistency between this discussion and the Interim Order or the Term Sheet, the terms of the Interim Order and the Term Sheet control.

> **Use of Cash Collateral**. The Trustee will be authorized to use cash collateral in accordance with and limited by the Budget and as otherwise permitted under the Interim Order and the Term Sheet. cash Collateral shall be paid over to the Prepetition Senior Agent as received.
>
> **Postpetition Facility.** The Postpetition Lenders will provide a loan facility up to a maximum of $8,962,000. The Postpetition Facility shall be used in a manner consistent with the Interim Order and the Budget solely for (i) post-petition operating expenses and other working capital needed to operate the Debtors' businesses to accomplish an orderly liquidation, (ii) to fund the Carve Out and (iii) as otherwise consented to in writing by the Postpetition Agent in its sole discretion.
>
> **Validation of Liens and Obligations**. The Interim Order validates, as of the Petition Date, the validity and priority of the Prepetition Senior Liens, the subordination of the Prepetition Subordinated Liens to the Prepetition Senior Liens, and the Prepetition Senior Obligations. The Prepetition Liens shall be junior only to the (i) Carve Out, (ii) Postpetition Liens, and (iii) Prepetition Permitted Liens.
>
> **Adequate Protection**. The Prepetition Senior Lenders and the Prepetition Subordinated Lenders shall receive adequate protection liens to secure the Prepetition Secured Obligations and adequate protection superpriority claims. The grant of adequate protection liens and adequate protection superpriority claims to the Prepetition Subordinated Lenders is conditioned on the Prepetition Subordinated Lenders proving the extent, validity and priority of their liens. The adequate protection liens and the adequate protection superpriority claims shall be junior in all respects to the Postpetition Liens and the Carve Out, and the Adequate Protection Superpriority Claims are junior in all respects to the Postpetition Superpriority Claim. The Postpetition Superpriority Claim shall be subordinate only to the Postpetition Liens, the Carve Out, and the Prepetition Senior Obligations (with respect to the Prepetition Collateral only) and shall otherwise have priority over any and all claims and administrative expenses of the kinds specified in or

8

ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.

**Postpetition Liens**. The Postpetition Agent, on behalf of and for the benefit of itself and the other Postpetition Lenders, will be granted automatically and properly perfected postpetition security interests in and liens on (collectively, the "Postpetition Liens") any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, **including, without limitation**, **all claims or causes of action or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation incurred by any of the Debtors pursuant to any applicable Section of the Bankruptcy Code, including, without limitation, Chapter 5 and Section 724(a) of the Bankruptcy Code (the "Avoidance Actions") and the Debtors' rights under Section 506(c) and Section 550 of the Bankruptcy Code as well as the proceeds thereof.** The Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the Postpetition Liens and the Adequate Protection Liens.

**Priority of Postpetition Liens**. The Postpetition Liens shall be and remain senior to the Prepetition Liens, and all existing liens, security agreements, assignments, security interests, and rights under the Prepetition Credit Documents shall be deemed to be delivered and/or filed in connection with the Postpetition Facility. Except as set forth in the Interim Order or in the Term Sheet, nothing shall impair the rights of the Prepetition Senior Lenders under the Subordination Agreement as in effect prior to the date hereof. The Postpetition Liens shall be junior only to the (i) Carve Out, and (ii) the Prepetition Permitted Liens, and shall otherwise be senior in priority and superior to the Prepetition Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the Postpetition Collateral.

**Application of Proceeds of Prepetition Collateral**. Proceeds of the Prepetition Collateral shall be used first pay the Prepetition Senior Obligations, all Postpetition Liens and the Carve Out.

**Application of Proceeds of Postpetition Collateral**. All net proceeds from any disposition of Postpetition Collateral arising on or after the Petition Date shall be applied, subject to the funding of the Carve Out: first, to payment of the Prepetition Senior Obligations in accordance with this Interim Order, the Term Sheet, the Final Order, any Postpetition Loan Documents and subject to any supplemental written terms or directions issued to the Trustee from the Postpetition Agent; second, to payment of any fees, costs and expenses payable and reimbursable by the Trustee or the Debtors' estates in connection with the Postpetition Facility and any Postpetition Loan Documents; third, to payment of the Postpetition Facility; and fourth, to the Prepetition Subordinated Obligations.

**Postpetition Facility and Other Expenses**. The Postpetition Agent and the other Postpetition Lenders may incur legal, accounting, collateral examination, monitoring and

appraisal fees, fees and expenses of other consultants or advisors, and indemnification and reimbursement obligations with respect thereto and the Trustee is authorized and directed to pay all reasonable and documented out-of-pocket expenses of the Postpetition Agent and the other Postpetition Lenders in connection with the Postpetition Facility (including, without limitation, expenses incurred prior to the Petition Date), including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Trustee's receipt of invoices for the payment thereof. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the Postpetition Agent and the other Postpetition Lenders shall not be required to comply with the U.S. Trustee fee guidelines. Notwithstanding the foregoing, at the same time such invoices are delivered to the Trustee, the professionals for the Postpetition Agent and the other Postpetition Lenders shall deliver a copy of their respective invoices to counsel for the Trustee, each Prepetition Lender and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Trustee, the U.S. Trustee, or any Prepetition Lender with respect to such invoices within ten (10) days of the receipt thereof will be resolved by the Court. In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Bankruptcy Rule 9018 shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Trustee.

**Carve Out**. As used in this Interim Order, the term "Carve Out" means, collectively, the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code, (ii) the Trustee's commission under section 326 of the Bankruptcy Code; (iii) the aggregate amount of professional fees and reimbursement of out-of-pocket expenses of the Trustee's retained attorneys and accountants (but specifically excluding fees, costs and commissions of any retained auctioneer) as approved by the Court, which amounts shall not exceed $750,000. No portion of the Carve Out, nor any Cash Collateral or proceeds of the Postpetition Facility may be used in violation of the Interim Order. The Postpetition Lenders reserve the right to object to the Trustee's commissions or to the fees and expenses sought by her professionals. The Carve Out will be funded at the rate of $100,000 per week with the final payment due on the Termination Date. Upon the occurrence of the Termination Date, the Postpetition Obligations, the Postpetition Liens, the Postpetition Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and the Prepetition Secured Obligations shall remain subject to the payment of the unfunded amount of the Carve Out. Any amounts paid on account of the Carve Out and not used to pay US Trustee fees, Clerk noticing charges, or commissions of the Trustee or fees and expenses of her retained professionals, shall be paid to the Postpetition Agent.

**Section 506(c) Claims**. Except for the Carve Out, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Postpetition Agent, the Postpetition Lenders, the Postpetition Collateral, the Prepetition Senior Agent, the Prepetition Senior Lenders, the Prepetition Subordinated Lenders, the

Prepetition Senior Liens or the Prepetition Subordinated Liens pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

**Events of Default.** The following constitute events of default: (i) conversion of any of the Debtors' cases to chapter 7 of the Bankruptcy Code; (ii) breach of terms or provisions of the Interim Order or any Final Order; (iii) deviation from Budget of more than 5% per week in the aggregate, or 10% per line item per week; (iv) dismissal of any of the the Debtors' cases; (v) failure to deliver proceeds of any Prepetition or Postpetition Collateral to Postpetition Agent for application in accordance with the Interim Order or Final Order; (vi) failure to promptly move to retain Taylor & Martin as fleet liquidation consultants to Trustee and auctioneer; or (vii) filing of any application or motion by the Trustee with the Court that seeks to revoke, vacate, reverse, stay, modify, supplement or amend the Postpetition Facility, or any Financing Orders, without the written consent of the Postpetition Agent; (viii) incurring any liability which is senior or equal in priority to any Postpetition Obligations, except as provided in the Financing Orders; (ix) the Final Order is not entered by the date that is forty (40) days after entry of the Interim Order, or is not in form and substance satisfactory to the Postpetition Agent; (x) entry of an order permitting any creditor, other than the holders of Prepetition Permitted Liens, the Postpetition Agent or the Prepetition Senior Agent to foreclose or otherwise realize on any of the Prepetition Collateral or Postpetition Collateral; (xi) payment of any prepetition liability of the Debtors other than as set forth in an Order entered by this Court satisfactory to the Postpetition Agent authorizing the Trustee to operate the Debtors, the Financing Orders, or as otherwise consented to by the Postpetition Agent in its sole discretion; or (xii) entry of an order of a court determining that the Subordination Agreement is not effective, binding and enforceable in accordance with its terms.

**Remedies and Relief from Automatic Stay.** Immediately upon the occurrence of an Event of Default, the Postpetition Agent may deliver a termination declaration by facsimile (or other electronic means, including electronic mail) to counsel to the Trustee, to the Prepetition Subordinated Agent, and the U.S. Trustee and the Postpetition Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on that date. Any automatic stay otherwise applicable to the Postpetition Lenders, the Postpetition Agent and the Prepetition Senior Agent is modified so that five (5) business days after the termination declaration date, the Postpetition Agent may in its sole discretion declare the Postpetition Facility terminated and upon termination of the Postpetition Facility in accordance with the Interim Order, the automatic stay shall automatically be terminated without further notice or order and the Postpetition Agent, the Postpetition Lenders, the Prepetition Senior Agent, and the Prepetition Senior Lenders shall be permitted to exercise all remedies set forth in the Interim Order, the Prepetition Senior Credit Documents, and as otherwise available at law against the Prepetition Collateral or Postpetition Collateral, without further order of or application or motion to the Court.

**F.  Grounds For Relief Requested**

31. Section 363(c)(3) of the Bankruptcy Code authorizes the Court to provide for the

11

use of cash collateral on a preliminary basis if there is a reasonable likelihood that the debtor will succeed at a final hearing under section 363(e) of the Bankruptcy Code.

32. Under section 363(c)(2)(A)(B) of the Bankruptcy Code, a trustee may use, sell or lease cash collateral in which an entity has an interest only where such entity consents or the bankruptcy court so authorizes after notice and a hearing.

33. Section 363(a) of the Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title...."

34. Under section 363(e) of the Bankruptcy Code, in exchange for a trustee's use of an entity's cash collateral, that entity is entitled to receive adequate protection.

35. The Prepetition Senior Lenders consent the the Trustee's use of cash collateral in accordance with the Interim order and the Term Sheet.

36. The Prepetition Subordinated Lenders claim an interest in cash collateral, junior to the interests of the Prepetition Senior Lenders. The Subordination Agreement requires the Prepetition Subordinated Lenders to consent to an application to use the Cash Collateral to which the Prepetition Senior Lenders have consented. Section 2.02 (h) of the Subordination Agreement provides:

> If any Credit Party or Credit Parties shall become subject to a Proceeding and such Credit Party or Credit Parties as debtor(s)-in-possession (or a trustee appointed on behalf of such Credit Party or Credit Parties) shall move for either approval of financing ("DIP Financing") in an amount not to exceed the Senior

> Debt Cap to be provided by one or more of the Senior Lenders (or to be provided by any other Person or group of Persons with the consent of the Required Lenders) under Section 364 of the Bankruptcy Code or the use of cash collateral with the consent of the Senior Lenders under Section 363 of the Bankruptcy Code, the Subordinated Creditor agrees as follows: (A) adequate notice to Subordinated Creditor for such DIP Financing or use of cash collateral shall be deemed to have been given to the Subordinated Creditor if the Subordinated Creditor receives notice in advance of the hearing to approve such DIP Financing or use of cash collateral on an interim basis and at least 5 Business Days in advance of the hearing to approve such DIP Financing or use of cash collateral on a final basis, (B) such DIP Financing (and any Senior Debt which arose prior to the Proceeding) may be secured by liens on and security interests in all or a part of the assets of the Credit Parties which shall be superior in priority to the liens on and security interests in the assets of the Credit Parties held by any other Person, (C) the Subordinated Creditor will not request or accept adequate protection or any other relief in connection with the use of such cash collateral or such DIP Financing except as set forth in Section 2.02(i) below, (D) the Subordinated Creditor will subordinate (and will be deemed hereunder to have subordinated) its liens and security interests (i) to the liens and security interests securing such DIP Financing (the "DIP Liens") on the same terms (but on a basis junior to the liens and security interests of the Senior Agent and Senior Lenders) as the liens and security interests of the Senior Agent and Senior Lenders are subordinated thereto (and such subordination will not alter in any manner the terms of this Agreement), (ii) to any "replacement Liens" granted to the Senior Agent and Senior Lenders as adequate protection of their interests in the Collateral (the "Senior Adequate Protection Liens") and (iii) to any "carve-out" agreed to by the Senior Agent or the other Senior Lenders and (E) the Subordinated Creditor shall not contest or oppose in any manner any such DIP Financing, cash collateral use or adequate protection provided to the Senior Agent and Senior Lenders, and Subordinated Creditor shall be deemed to have waived any objections to such adequate protection, DIP Financing or cash collateral use, including, without limitation, any objection alleging the Credit Parties' failure to provide "adequate protection" of the interests of the Subordinated Creditor in the Collateral….

37. Accordingly, the Prepetition Subordinated Lenders are receiving the form of adequate protection required by the Subordination Agreement.

38. Further, the Trustee seeks authorization to obtain financing by providing security interests and liens as set forth above pursuant to sections 364(c) and (d) of the Bankruptcy Code.

39. The Trustee, in her business judgment, submits that the proposed Postpetition Facility is the only alternative financing available under the circumstances. The Trustee cannot

rely on cash collateral alone to preserve or continue the Debtors' businesses, let alone maximize the assets of the estates.

40. The Trustee believes that the terms of the Postpetition Facility, which have been fully disclosed and which have been negotiated in good faith and on an arms-length basis, are fair and reasonable under the circumstances.

41. Because such financing is critical to continuing operations so as to permit the Trustee to maximize the value of the estates' assets, the Trustee submits that she has properly exercised her business judgment.

42. The Trustee need only demonstrate "a good faith effort that credit was not available without" the protections of Sections 364(c) and 364(d) of the Bankruptcy Code. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (the "statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Here, given the financial condition of the Debtors and their failure to remain going concerns, few lenders would be likely, able, or willing to extend the necessary credit at all and in such a case, "it would be unrealistic and unnecessary to require [the Debtors or the Trustee] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d at 1088; *In re 495 Cent. Park Ave., Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992).

43. Moreover, the statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding that the Trustee is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section

364(c) of the Bankruptcy Code and to whether: (a) a trustee is unable to obtain unsecured credit by allowing a lender only an administrative claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender. *In re Ames Dep't Stores*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

44. Here, the Trustee satisfies this three-part test. As discussed above, and in light of the Prepetition Secured Obligations and the Prepetition Liens, there is no collateral available to pledge to a third lien lender and no rational lender would advance funds to the Trustee on an unsecured administrative priority basis, as it is highly unlikely that the collateral here has a value in excess of the second lien debt.

45. Neither the Debtors nor the Trustee have the ability to borrow on any more favorable terms than provided herein, as there are no borrowing covenants or availability limitations. This is particularly true in light of the immediate time constraints and other circumstances faced by the Trustee.

46. The Postpetition Facility undoubtedly permits the Trustee to preserve the Debtors' assets.

47. Under the circumstances, the terms of the Postpetition Facility are fair, reasonable and adequate and the Trustee has demonstrated in good faith that credit was not available without the protections afforded by Subsections 364(c) and (d) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d at 1088; *see also In re Plabell Rubber Prods.,* 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).

48. If a trustee is unable to obtain credit under the provisions of section 364(c) of the Bankruptcy Code, the trustee may obtain credit secured by a senior or equal lien on property of

15

the estate that is already subject to a lien, commonly referred to as a "priming lien" under section 364(d) of the Bankruptcy Code under which the Court may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if the [debtor] is unable to obtain credit otherwise, and there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

49. Here, the Subordination Agreement provides that each Prepetition Subordinated Lender is deemed to have consented to Postpetition Facility to be provided by the Prepetition Senior Lenders, including priming of the Prepetition Subordinated Liens, up to the $66 million cap in the Subordination Agreement. The Prepetition Subordinated Lenders are receiving the form of adequate protection to which they entitled under the Subordination Agreement.

G.   **Immediate Relief Is Necessary**

50. Absent interim relief, the Trustee will be unable to complete deliveries and marshal assets in a timely manner, which is essential to preserving the value not only of the fleet, but also of the receivables. Accordingly, the Trustee submits that it is appropriate for the Court to approve the relief on an interim basis. As discussed above, , the estates will suffer immediate and irreparable harm if the relief requested were not granted.

H.   **Good Faith Under Section 364 of the Bankruptcy Code**

51. The Trustee and the Postpetition Agent negotiated the terms of the Interim Order and the Term Sheet at arms'-length and in good faith.

52. The Trustee also submits that the Postpetition Agent and the other Postpetition Lenders have acted in good faith.

53. Therefore, the Trustee submits that the Postpetition Agent and the other Postpetition Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code.

**I.   Notice**

54. Notice of the interim hearing and the emergency relief requested herein has been provided by the Trustee or the Prepetition Senior Agent, to (a) the Office of the United States Trustee, (b) the Prepetition Subordinated Agent, and (c) the Debtors.

55. The Trustee proposes to provide notice of the final hearing to the same parties as well as (a) the internal Revenue Service, (b) each of the Debtor's 20 largest creditors, and (c) any party that has filed a notice of appearance prior to the service date.

**J.   Conclusion**

Wherefore, the Trustee respectfully requests that this Court grant all of the relief requested herein and enter the Interim Order submitted.

>FORMAN HOLT ELIADES AND YOUNGMAN LLC
>Proposed Attorneys for Catherine E. Youngman,
>Chapter 7 Trustee
>
>By: */s/ Harry M. Gutfleish*
>    Harry M. Gutfleish

Dated:  June 12, 2014